SHUBERT THEATRICAL CO. v. ZIEGFELD.

(Supreme Court, Appellate Term. March 5, 1908.)

1. CONTRACTS—ACTIONS—PARTIES.

In the absence of an assignment of the cause of action, plaintiff cannot recover on a contract between defendant and a third person.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 790. 1592.]

2. SAME—SUFFICIENCY OF EVIDENCE.

Evidence in an action on a contract examined, and *held* insufficient to show that plaintiff is a party to the contract.

Appeal from City Court of New York, Trial Term.

Action by the Shubert Theatrical Company against Florenz Ziegfeld. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and MacLEAN, JJ.

Leon Laski, for appellant.
William Klein, for respondent.

MacLEAN, J. In March and April, 1906, certain cablegrams were interchanged between one Lee Shubert in New York and the defendant in Paris. Shubert sent the first March 7th:

"Have great play suit Held can put into rehearsal immediately are you interested."

The defendant replied March 8th:

"If for Casino interested show your confidence piece cable me Munro to-day one thousand dollars. Will sail Saturday if we fail to do business you pay trip if we contract we share expense."

Shubert cabled March 9th:

"Casino opens spring play Motor Girl great star part salary Held one thousand dollars fifty per cent. profits I make production if terms satisfactory."

Ziegfeld same date cabled:

"Personal interview imperative my cable stated only terms under which I would sail. * * *"

Other messages were sent intermediate. April 5th Ziegfeld cabled:

"Surprised misleading cable no contract exists if we fail make contract I return thousand immediately."

One thousand dollars was remitted him that day. The defendant came to New York. Negotiations were had, but no contract was signed between them, although, as may be gathered from the concurrent testimony (in most other things conflicting) of Lee Shuber, the defendant, and Mr. Klein, the plaintiff's legal adviser, and who had also advised the defendant, a proposed contract was drawn up, with the terms of which both parties were satisfied; Shubert saying on his direct:

"I was willing at all times to sign this contract and to carry out the terms of it."

And on the cross:

"I have testified of my willingness to sign this proposed contract, Exhibit P."

Ziegfeld said on his direct:

"I proposed the terms of Exhibit P. * * * I was willing and ready to sign proposed contract, Exhibit P."

And on the cross:

"The contract drawn up is a perfectly fair contract. I drew it up myself. * * * This contract suited me absolutely. I was willing to sign it. * * * This was the only one under consideration, and I was absolutely satisfied with it, and I had no complaint against it of any kind."

That proposed contract, so satisfactory to both, was put in evidence by the plaintiff as Exhibit P. It should exhibit plainly enough who were the parties and what were their relations. It was to be a—

"memorandum of agreement * * * by and between Lee Shubert, * * * party of the first part, Florenz Ziegfeld, Jr., individually and as manager of Madame Anna Held, party of the second part, and Shubert-Ziegfeld, Limited, a corporation proposed to be organized, * * * party of the third part."

It recited that the parties of the first and second part agreed to bring about and effect the incorporation of a new company, of which a proposed certificate was annexed, and wherein was proposed as the title, Shubert-Ziegfeld, Limited, with a capital of $50,000, and as stockholders and directors Lee Shubert and J. J. Shubert, with four shares and one share, respectively, and Florenz Ziegfeld, Jr., and Samuel F. Kingston, with four shares and one share, respectively, and which was followed by a further proposed agreement to star Anna Held in a musical comedy and such other new musical comedies as should be written for her, with an undertaking by Lee Shubert to guarantee the contract and salary of Madame Held for a year, and, as additional consideration for the execution

and delivery thereof, an engagement by him to deliver to Ziegfeld 250 shares of the common stock, full-paid and nonassessable. Not a word was there in it all of the plaintiff in this action.

In another matter Mr. Shubert, chief witness for the plaintiff, and Mr. Ziegfeld, agreed in court, namely, that Mr. Ziegfeld would not enter into relations with the plaintiff. Mr. Lee Shubert testified:

"He said: 'I do not want the contract made with the Shubert Theatrical Company, because I do not want to meet anybody but you.'"

Mr. Ziegfeld said:

"I have never dealt with the Shubert Theatrical Company. * * * I absolutely refused to deal with any company."

There is nothing in the case establishing any relation between the corporation, here plaintiff, and the defendant; but the contrary. Of the remittance Mr. Shubert said:

"I authorized my bookkeeper to draw a check and to go to the bank and send $1,000 to Mr. Ziegfeld."

And throughout his entire testimony he (chief witness for the plaintiff), speaking of the person who did things and was concerned in the matters, said "I" and "my." On redirect, however, the plaintiff's counsel led him with:

"Q. Mr. Shubert, this $1,000 that was sent to Mr. Ziegfeld, was any part of that your personal money?"

And he returned:

"A. No, sir."

Tracing the source of Mr. Shubert's money made no difference to Mr. Ziegfeld. Transpiring that it once belonged to the Shubert Theatrical Company did not assign Lee Shubert's cause of action, if any he had, to the plaintiff. Negotiations having been instituted and continued by Shubert personally, the defendant was not bound to enter into relations with another. Modern changes have been made in the law; but a man may still at the outset select his own creditor and decline to negotiate with one against whom he is prejudiced, as one might be against an aggregation of anonymous persons in this state, wherein corporations may be organized without the participation of a single responsible individual, and conducted by people wholly without pecuniary stake. In the proposed contract the defendant took care that he should stand upon an even footing, securing to himself half of the stock and representation on the board of an incorporation without a history, and so, if alert enough, bright enough, neither he nor his wife could be deceived or outwitted by resolutions or transactions behind his back. Why the proposed contract was not signed, and its terms carried out by Mr. Shubert in his willingness so to do, does not appear. He says the defendant never did sign it, or offered it to him signed. Why await those things, when he had a copy of it from his own lawyer, who is the attorney and witness for the plaintiff herein?

The case was submitted to the jury, after the defendant's last motion to dismiss, on two questions: Whose were the $1,000? and, if the $1,000 were the plaintiff's, whose fault was it that the proposed contract was not executed? Upon these questions the verdict went to the plaintiff; but these questions were not at issue between Ziegfeld and the plaintiff, with which he had not had relations—every communication in the matter having been to or from Mr. Shubert down to the last, the demand for return of the money, which ran, to "My dear Ziegfeld," and was from "Yours truly, Lee Shubert." Without a cause of action shown against him, the defendant should have had a dismissal.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

BISCHOFF, J. (concurring). It quite clearly appears from the record that the defendant had no transactions with the plaintiff corporation, and that the obligation to return the money in suit arose out of an agreement made with Shubert, an individual, whereby the money was to be returned if a contemplated contract were not entered into. Failing an assignment of the cause of action to the plaintiff, the judgment rendered is without support, and there should be a new trial of the cause.